Good morning. May it please the Court, my name is Joseph Belichick, appearing on behalf of the appellate Charles James Chatman. I'd like to focus on the most critical issues, including one, whether tolling applies during the erroneous strikeout order which barred Chatman from pursuing his claims under IFP status, and how to count the various tolling periods. Well, Mr. Belichick, as I understand it, the problem we have in this case is we've got two separate tracks here. And the order did not bar him from filing any other actions. It simply denied him the right to pursue one action under IFP status. As I understand it, he interpreted that ruling to mean he couldn't file any other actions anywhere else. But the problem I'm having for purposes of equitable tolling is there was nothing physically preventing him from filing another action seeking IFP status, having that status denied, and then challenging on appeal the denial of IFP status. That is true. Chatman understood when the strikeout order was issued that he did not have IFP status. And as an indigent prisoner who did not have any fees to pay for any court costs, he understood he needed that to pursue his claims. I understand that the amici have said, but he could have filed. The issue here, though, is that if he would have filed, would that filing and potentially seeking IFP status to pursue those claims, would that have resulted in another strike against him? Well, that's an issue that we can't answer because it's a completely speculative question. We don't know what a different court in a different district would have done. But the fact is he didn't do it. And now he's seeking equitable tolling because of his misapprehension of the law and asking us, in essence, to stop the running of the statute of limitation clock because he didn't try something that he didn't think he could do in this litigation. Okay. When the strikeout order was issued, he actually did seek IFP status again from the exact same court in Early to pursue his appeal. And the court said the Adams case. That's correct. He did not get two separate. Correct. He did not file the Adams case because he understood that if he did that, he risked getting another strike against him. I understand all that. But the question is, if equitable tolling is an extraordinary remedy that the Supreme Court has told us we must invoke sparingly, has he made out a sufficient showing of entitlement to equitable tolling simply because he misapprehended the law and never tried to pursue his claim against Adams when he still had time to do so? It is true that Adams did not file another court action in the Adams claims. He originally pursued his administrative process regarding the Adams claims. When he was blocked by the prison officials during that process, he filed Adams 1, which was his first attempt to pursue those Adams claims. The district court disagreed and said, you didn't finish your administrative process. He only took it to what was it, the first level? Basically, he said that his mail was being taken. And he was getting threats. The case law says when the prison officials block it, you are excused, and he should have been allowed to file that claim. The district court did not agree, though. The district court said you only went to the first level. We're sending him back down. He then went back to his administrative process. So I understand that's the Adams track. Then early happened, and then early basically said you are struck out. And I'd say he did seek IFP status on appealing the early ruling, and that same court said your appeal is not taken in good faith and denied it. This Court, however, gave him IFP status. He won on that appeal. And that's, I guess, the crux of my problem, is just because a judge in the early case ruled against him does not mean that a different judge in the Adams case would have reached the same conclusion. Maybe that judge would have been convinced that this was a meritorious claim and that it was not frivolous and would have given him IFP status. Maybe the judge would have followed the judge in the early case and denied. So now he has two appeals to the Ninth Circuit. But he didn't do any of that. Instead, he assumed that he couldn't do it. And the question is, is that good enough for equitable tolling? I think it is. And I think that you have to look at, Chapman had other cases pending. He had other cases pending in the Eastern District. There's a case called Felker and a case called Tyner. When the strikeout order in the early case was issued, both of those courts then said your case has stayed, IFP status is stopped. So he had to respect another court saying, this court issued a strikeout order, you can't proceed with your claims. All right? But he didn't get a stay of this case. He didn't do that. He didn't. No, he did not stay the Adams claims because the Adams claims were back in the administrative process. He then finished the administrative process in 2002. Strikeout order issues in January 2004. Right. But he does not file the Adams case until when? Correct. He does not file Adams until 2007 after the early court looked at this issue a second time following this court's order and said, we're looking at it again fresh and we find that the earlier order was in error. We're now giving you IFP status. And he filed his claims seven months later. But in that five-year intervening period, he didn't do anything in the Adams case other than wait to finish his litigation in early. That is. The question is, does that give him equitable tolling in Adams? I would say it is enough to meet the standard California three-part test for tolling. It says, timely notice of claims, lack of prejudice to the defendants, and reasonable good faith conduct. Who had notice at this point? As I understand it, the defendants in Adams were never served. So is your argument that the sort of the State must have known in its omnificence? No. No. Actually, each of the defendants were involved in the administrative process. So Chapman, immediately after the claims arose, he filed the forms. He identified the people involved. The defendants signed the various forms. They were identified in the hearings. They attended the hearings. We address all of this in the actual briefing to show each of these people were involved in some way. And if there was someone, maybe one of them wasn't, didn't get enough notice, the district court can address that after this hearing where Chapman is allowed to develop those facts. But we have clear records saying, you know, Adams is named, Ward is involved. People are signing forms. So there is notice that he said, I have these claims. I am being mistreated. And because they were put on notice, they had the ability to investigate those claims. And, in fact, the record shows they investigated those claims. And we have no reason to doubt that those records still don't exist. So having the defendants respond to these claims, and we admit years later, especially years later after this appeal, we say that that is not unfair to those defendants because under California law, they received notice and they had the ability to investigate the claims. And on the third factor, getting back to your first question, the third factor is reasonable, good-faith conduct. And we submit that Chapman acted reasonably. He is a non-lawyer. He pursued his process. When he was blocked, he filed suit. When the district court said not enough, he went back. We understand. The amici say he should have filed suit and engaged in a futile act. He then would have had no IFP status, no fees. His case would have been dismissed. And he understood. He might have been wrong, but we say it was not unreasonable for him in light of what Felker and Tyner did and what the early courts denied him IFP status for his appeal. They clearly would have viewed that as a blatant violation of their strikeout order. And the Adams claims were pending in the northern district, same where the early case was pending. So you're asking this unskilled prison complainant to file a new case, and if he's wrong, right? If he's wrong, he struck out. So maybe he wins on his first appeal, but by the time it comes back down, he has another strike against him. Maybe he should have done that. Maybe he should have appealed it. Maybe he should have had to win two appeals. But we don't believe that it's unreasonable in light of Chapman, an unskilled non-lawyer, and how the other courts treated him to say, I should sit tight, I should wait and see what happens, while diligently pursuing his claims. Do you want to reserve about a half a minute? Yes, please. Thank you. Good morning. Good morning. May it please the Court. My name is Constance Picciano. I'm with the California Attorney General's Office. I'm appearing as amicus curiae for the State of California and for the Department of Corrections and Rehabilitation. It is essential in this case to understand that what Chapman is seeking is more than eight years to file an action that challenged only his placement in administrative segregation and his transfer to another prison. It is not disputed that Chapman is entitled to a generous two-year statute of limitations and another two years merely because he is a prisoner. To more than double that amount of time, Chapman seeks or advances several theories that are unprecedented in California law. I want to focus on two key errors in his argument. Chapman is not entitled to double count days merely because he may have been entitled to tolling for more than one reason. Chapman is not entitled to tolling simply because he was denied IFP status by the Northern District. The district court in this case correctly noted that he was denied IFP status in Chapman v. Early, although he was allowed to proceed IFP in two cases pending in the Eastern District. Mr. Chapman had no reasonable expectation, if he timely filed the Adams II case, that anything other than it being stayed pending this Court's decision on whether or not he should have IFP status would occur. In addition to that, he at the same time, he was pursuing two separate cases involving unrelated claims. Right. In the Eastern District of California in which they had granted IFP status. Yes. Those two cases. So in essence, his argument comes down to picking and choosing. He wants to pick the adverse ruling in the Northern District of California and say, because I was ruled against here in San Francisco, I assume that I would be ruled against in Sacramento if I filed a third action. Well, apparently he was under the misunderstanding that he should have filed Adams II in the Northern District because it was initially filed there and transferred to the Eastern District where Venue was appropriate. That's because he was in a State prison in this district when he first filed it. When he first filed it, yes. And then he got transferred to a prison in the Eastern District. The events occurred in the Eastern District, so Venue was always appropriate in the Eastern District. He apparently misunderstood where he should have filed that second action. But he also, in addition to misunderstanding IFP issues, he also misunderstood Venue. Yes. Okay. I think it's also important to point out that it would have been impossible for him to incur a third strike for refiling Adams II unless the Northern District was correct in finding that he was not entitled to IFP status. In other words, a decision that refiling Adams II constituted a strike could not occur if, in fact, the Northern District was wrong and their finding that he had three strikes was erroneous. Because that erroneous decision could never form the basis for a new strike. So he would have been entitled to reversal of any decision that Adams II should be dismissed if or that he was required to pay the filing fee. As I understand it, it would eliminate one of the strikes, right? Yes. Under 1915. So if it doesn't count, then he doesn't have three strikes against him when he files Adams II. That's correct. Okay. In addition, there is more than sufficient evidence that he is not entitled to equitable delays that he engaged in. There was over three years between the accrual of his cause of action and the entry of the Northern District's order. He was under absolutely no disability in refiling Adams II during that time period. There was a one-year and ten-month delay between this Court's reversal of the Northern District before he refiled and a seven-month delay between the action of the Northern District in restoring his IFP status and the filing of this action. It is clear that he did not diligently pursue his claims and that he is not entitled to equitable tolling. I do want to comment briefly on the administrative appeal procedure and why that does not constitute notice to any of the defendants. There are over 170,000 inmates in the Department of Corrections. They file hundreds of thousands of administrative grievances every year. The purpose of those grievances is not to preserve or anticipate litigation. That appeals process was created for the purpose of giving an inmate a voice to complain, to ask for relief, for prison officials to negotiate peacefully over what the inmate wants compared to what security or institutional procedures require. It would be clearly unreasonable to assume that an inmate who files a grievance wants anything more than his complaint remedied. So is your argument that the mere filing of an administrative grievance is not sufficient notice to a putative defendant in a civil rights action? Absolutely, under this type of administrative procedure. There are administrative procedures that may meet the standard because they were designed specifically in anticipation of filing litigation. For example, you have to exhaust an administrative remedy before you can file an EEOC complaint, or under the California Tort Claims Act, you have to file a proceeding, an administrative proceeding before you can get to court. Under the PLRA, don't you have to exhaust administrative remedies? You do, but that was sort of layered on top. It has nothing to do with the origination of the appeals procedure by the Department of Corrections. That was for the purpose of resolving peacefully disagreements between the administration and the prisoner, a way that he could have a voice to say, I'm not getting the medical diet I need, I didn't get to see the doctor on Tuesday. It's a way for prison staff to act upon complaints. I understand that, but that's required of him, isn't it? Exhaustion of administrative remedies is an affirmative defense, not necessarily a requirement to bring suit. He's saying he doesn't have to exhaust his administrative remedies with the prison if he has a grievance before filing a 1983 suit? Before – it's not an absolute prerequisite. It's excused for many reasons by the courts. It is – Well, I mean, I see your colleagues here all the time saying he didn't exhaust his administrative prison remedies. Because he, under those circumstances, would have to prove up a sufficient excuse for not exhausting. Exhaustion is an affirmative defense for the defendants, which they must prove up. And yes, he does – And if they prove it, he's out. Yes. So that gets back to my point. He has to do it. Yes. But there's no reason that prison officials could anticipate out of the hundreds of thousands of administrative grievances which one is actually going to get to be a lawsuit. Obviously, only a tiny fraction of the appeals that are filed every year ever gets to the courthouse. They're either resolved and the inmate is satisfied or he doesn't want to go to the trouble of filing a lawsuit. All he ever wanted was a resolution of that grievance. It's different than an administrative procedure that's invented for the purpose of preserving evidence for anticipated litigation. Finally, Mr. Chapman himself conceded that the Northern District's denial of his In his objections to the findings and recommendations in this case, he told the Eastern District that had he known that he could have filed his case in the Eastern District, he would have done so. He is not entitled to equitable tolling under any version of California law. Thank you, Ms. Picciano. Mr. Belichick, back to you. You have about a half a minute left. Thank you very much. On the first issue, on double counting, California Supreme Court has given clear instructions under the Lansing case that all tolling periods come on the end period and you total them up separately. On the next issue, we do not know what the Court would have done if he would have filed, but it certainly could have been a frivolous filing lacking any basis in law or fact when there's a pending strikeout order in front of the exact same court that he mistakenly thought he had to file in because Adams 1 was filed in the Northern District. But the question is what would the Eastern District have done? No, he thought he had to file in the Northern District. I know what he thought, but what you're asking us to do is to speculate on what the Eastern District would have done had he filed the claim in the proper venue, even though he misunderstood that it was going to be filed in the same court that had previously ruled against him. I think the same facts apply that the Eastern District had stopped all of his cases when the Northern District issued the strikeout order. So the courts were basically working and saying one strikeout is enough to strike out for all. I think we understand. Thank you, Mr. Belichick. Thank you. Mr. Picciotto, thank you as well. The case argued, submitted. Mr. Belichick, thank you. Yes, thank you very much for handling the case on a pro bono basis. We appreciate your having taken the appointment. Thank you very much.
judges: Wallace, Silverman, Tallman